FILED
CLERK
4/9/2015 2:13 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
WENDY W. CHO *and others similarly situated*,

        Plaintiff,

    -against-

JS AUTOWORLD 1 LTD d/b/a ATLANTIC TOYOTA, JS AUTOWORLD LLC d/b/a ATLANTIC TOYOTA, ATLANTIC TOYOTA, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR SALES, U.S.A., INC., TOYOTA FINANCIAL SERVICES AMERICAS CORPORATION, TOYOTA MOTOR CREDIT CORPORATION, TOYOTA FINANCIAL SERVICES CORPORATION, and TOYOTA MOTOR CORPORATION,

        Defendants.
---------------------------------------------------------X

**DECISION AND ORDER**
14-cv-5798 (ADS)(ARL)

**APPEARANCES:**

**Galarza & Taylor Law PC**
*Attorneys for the Plaintiff*
5020 Sunrise Highway 2nd Floor
Massapequa Park, NY 11762
    By: Brooks Taylor, Esq., Of Counsel

**Reed Smith LLP**
*Attorneys for the Defendants Toyota Motor North America, Inc.; Toyota Motor Sales, U.S.A., Inc.; Toyota Financial Services Americas Corporation; Toyota Motor Credit Corporation; and Toyota Motor Corporation*
599 Lexington Avenue
29th Floor
New York, NY 10022
    By: Casey D. Laffey, Esq.
        Samuel Kadosh, Esq., Of Counsel

**Galvano & Xanthakis PC**
*Attorneys for the Defendants JS Autoworld 1 Ltd. d/b/a Atlantic Toyota; JS Autoworld LLC d/b/a Atlantic Toyota; and Atlantic Toyota*
150 Broadway
Suite 2100
New York, NY 10038
    By: Anthony C. Xanthakis, Esq.
        Steven F. Granville, Esq., Of Counsel

**NO APPEARANCES:**

*The Defendants Toyota Financial Service Corporation and Toyota Motor Corporation*

**SPATT, District Judge**.

On October 3, 2014, the Plaintiff Wendy W. Cho (the "Plaintiff) and "others similarly situated" commenced this action against the Defendants JS Autoworld 1 Ltd. d/b/a Atlantic Toyota; JS Autoworld LLC d/b/a Atlantic Toyota; Atlantic Toyota; Toyota Motor North America, Inc.; Toyota Motor Sales, U.S.A., Inc.; Toyota Financial Services Americas Corporation; Toyota Motor Credit Corporation; Toyota Financial Services Corporation; and Toyota Motor Corporation. The Plaintiff raises claims for fraud, violations of New York General Business Law §§ 349 and 350, the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*; and Federal Reserve Board Regulation Z, 12 C.F.R. § 226, promulgated pursuant thereto. The Plaintiff seeks actual damages, statutory damages, attorneys' fees, and costs.

On December 31, 2014, the Defendants JS Autoworld LLC d/b/a Atlantic Toyota and Atlantic Toyota ("Atlantic Toyota") moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) to dismiss the complaint against them based on an arbitration agreement or, in the alternative, pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 3, 4 to compel arbitration of the claims against them and to stay the litigation pending such arbitration.

2

Also, on December 31, 2014, the Defendants Toyota Motor Sales U.S.A., Inc., Toyota Motor North America, Inc., Toyota Financial Services Americas Corporation, and Toyota Motor Credit Corporation (the "Toyota Motor" Defendants"), but not the Defendants Toyota Financial Service Corporation and Toyota Motor Corporation, moved pursuant to Sections 3 and 4 of the FAA to compel to compel arbitration of the claims against them and to stay the litigation pending such arbitration.

On March 11, 2015, the Clerk of the Court noted the default of the Defendant JS Autoworld 1 Ltd. d/b/a Atlantic Toyota.

On March 30, 2015, the Plaintiff moved pursuant to Fed. R. Civ. P. 4(d)(2) for (1) expenses incurred in making service on defaulting Defendant, JS Autoworld 1 Ltd., for failing to respond to a waiver of service and (2) reasonable expenses, including attorneys' fees, in connection with the motion.

For the reasons set forth, the motions to dismiss and/or to arbitrate are granted in part and denied in part and the Rule 4(d)(2) motion is granted.

## I. BACKGROUND

Unless stated otherwise, for purposes of the motions to dismiss and/or arbitrate, the following factual allegations are drawn from the complaint and construed in a light most favorable to the non-moving party, the Plaintiff.

A. <u>The Parties and Non-Parties</u>

The Plaintiff is an individual who at all relevant times resided in Massapequa, New York.

Upon information and belief, the Defendant-in-default, JS Autoworld 1 Ltd. d/b/a Atlantic Toyota, is a New York corporation with a place of business at 200 Sunrise Highway in Amityville, New York.

Upon information and belief, JS Autoworld LLC d/b/a Atlantic Toyota is a New York corporation with a place of business also at 200 Sunrise Highway in Amityville, New York.

Upon information and belief, these corporations buy and sell new and used automobiles through the internet and provide credit to persons to do consummate such purchases.

Upon information and belief, Toyota Motor Corporation is a Japanese corporation regularly engaged in the business of automobile manufacturing.

Upon information and belief, Toyota Financial Services Corporation is a Japanese corporation regularly engaged in the business of financial services in New York State.

Upon information and belief, Toyota Financial Services Corporation is a wholly-owned subsidiary of Toyota Motor Corporation.

Upon information and belief, Toyota Financial Services Americas Corporation is a California corporation that provides personal consumer credit in the United States.

Upon information and belief, Toyota Motor Credit Corporation is a California corporation regularly engaged in the business of providing consumer loans in New York State. and a wholly-owned subsidiary of Toyota Financial Services Americas Corporation.

Upon information and belief, Toyota Motor Sales, U.S.A., Inc. is a California corporation regularly engaged in the business of manufacture and distribution of Toyota automobiles; selling Toyota vehicles to Toyota dealerships; and marketing Toyota vehicles and Toyota financial services to the public at large. Upon information and belief, Toyota Motor Sales, U.S.A., Inc. is a wholly-owned subsidiary of Toyota Motor North America, Inc.

Toyota Motor North America, Inc. is a California corporation and a holding company of Toyota Motor Corporation.

The non-party Frank Wilson ("Wilson") was at all relevant times an employee and agent of Atlantic Toyota.

The non-party John Morgan ("Morgan") was at all relevant times an employee and agent of Atlantic Toyota.

B. The Underlying Allegations

In February 2014, the Plaintiff observed various television commercials promoting the purchase of certain new Toyota vehicles for zero percent interest over 36 months.

Upon information and belief, after observing the aforementioned television commercials promoting Toyota vehicles, the Plaintiff visited the Toyota website to investigate the vehicles and financing offers. Upon the representations made at that website, the Plaintiff decided to test drive a new 2014 Toyota Rav4 (the "Rav4").

On February 16, 2014, the Plaintiff visited Atlantic Toyota's showroom In Amityville, New York to test-drive a new 2014 Toyota Rav4. Wilson introduced himself to the Plaintiff as a salesman and asked her if she wished to purchase a new vehicle. The Plaintiff answered this question in the affirmative and subsequently test drove the Rav4.

The Plaintiff then informed Wilson that she wished to purchase the Rav4 with silver exterior and black interior. Wilson informed the Plaintiff that Atlantic Toyota did not then possess a Rav4 with silver exterior and black interior but assured the Plaintiff that he could locate the same and deliver it to the Plaintiff in a few days.

The Plaintiff agreed to purchase this vehicle type for a price of $24,888 and signed a "Vehicle Purchase Agreement" to evidence the same. The Vehicle Purchase Agreement is attached to the complaint. The Plaintiff used a credit card to place a deposit of $1,000 toward the

purchase of the new vehicle. Wilson informed the Plaintiff that he would contact her when Atlantic Toyota acquired the vehicle.

On February 18, 2014, Wilson telephoned the Plaintiff and informed her that the dealership had not acquired a Rav4 with silver exterior and black interior but was still attempting to do so. The Plaintiff asked Wilson if the dealership had the identical Rav4 in a different color in stock and if the dealership would honor the price for the vehicle in silver. Wilson answered in the affirmative and the Plaintiff arranged to visit the dealership again to explore the possibility of purchasing the Rav4 in a different color.

That evening, the Plaintiff visited the dealership. When the Plaintiff arrived, she learned that the dealership had in fact acquired a Rav4 with silver exterior and black interior, her original choice, after her communication with Wilson earlier in the day. After inspecting the vehicle, the Plaintiff expressed a preference for the same vehicle in magnetic grey. Atlantic Toyota agreed to substitute the otherwise identical vehicle for the same price, provided the Plaintiff agreed to take the vehicle immediately. The Plaintiff agreed to do so.

The Plaintiff desired to obtain credit in order to finance the purchase of the Rav4 for personal, family, and household use at the advertised zero-percent rate over 36 months offered by the Toyota Motor Credit Corporation on its website. Wilson directed the Plaintiff to Atlantic Toyota's finance department and introduced her to Morgan.

The Plaintiff alleges that her credit was sufficient for purposes of the zero-percent interest loan advertisement. The Plaintiff signed a number of documents, including an "Arbitration Agreement," which is attached to the complaint.

The Arbitration Agreement is purportedly between the buyer, namely, the Plaintiff, and "the Dealer signing below and anyone to whom the Dealer assigns this Arbitration Agreement." (Compl., Exh. E.) The Arbitration Agreement provides, in pertinent part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase or financing contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . You expressly waive any right you may have to arbitrate a class action.

However, no individual signed the Arbitration Agreement on behalf of Atlantic Toyota or any of the Defendants.

The Plaintiff tendered a further $5,000 by credit card toward the purchase of the Rav4, making her total down payment $6,000. The total cost of the Rav4 was $27,343.59, including sales tax, a dealer title processing fee, inspection fee, tire disposal fee, and registration and title fee. Accounting for the $6,000 down payment, the balance due on the Rav4 was $21,343.59.

When Morgan presented the Plaintiff with a Retail Installment Contract for her signature, she noticed that the "Amount Financed" was $22,647.09, a sum more than she expected. The Plaintiff queried Morgan about this apparent discrepancy. Morgan explained that the additional sums related to vehicle acquisition fees charged by Toyota Motor Credit Corporation for each new loan, incorrect tax calculations, vehicle title costs, and standard dealer charges.

The Plaintiff attempted to contact customer service for Toyota Motor Credit Corporation. Morgan assured her that she was paying the lowest fee for her loan. Morgan allegedly further explained to the Plaintiff that the Vehicle Purchase Agreement was improperly drafted and that

7

the costs of vehicle registration, vehicle inspection, and tire disposal fees were subject to sales tax.

According to the Plaintiff, she relied on Morgan's representations that $22,647.09 was the correct amount and she signed the Retail Installment Contract. However, the Plaintiff alleges that, contrary to Morgan's representations, the Retail Installment Contract included an additional $1,303.50 in costs she was not obligated to pay.

This suit, which raises claims of fraud, violations of New York General Business Law § 349 and 350, and TILA, followed. The alleged misrepresentations form the basis of the complaint.

Following the commencement of this litigation, by letter dated December 24, 2014, Samuel Kadosh, Esq. of Reed Smith LLP, counsel for the Toyota Defendants, on behalf of the Atlantic Auto Group, a holding company for 22 dealerships, including Atlantic Toyota, purported to "assign[] the non-exclusive rights under th[e] Arbitration Agreement to Toyota Motor Sales U.S.A., Inc[.], Toyota Motor North America, Inc., Toyota Financial Services Americas Corporation, Toyota Motor Credit Corporation and any other Toyota entity (the "Toyota Entities") as to any dispute or litigation involving the Toyota Entities." (Doc. No 21, Exh 3.) John Gentile, Esq., General Counsel to the Atlantic Auto Group signed this assignment, which, by the terms of the letter, expressed assent to the purported assignment. (Id.)

## II. DISCUSSION

A. The Motions to Dismiss and/or to Arbitrate

The FAA embodies a "federal policy favoring arbitration." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 302, 130 S. Ct. 2847, 177 L. Ed. 2d 567 (2010)(citation and quotation marks omitted).

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . .. should apply ordinary state law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995). This is because arbitration itself "is a matter of contract." Rent–A–Center, West, Inc. v. Jackson, 561 U.S. 63, 130 S. Ct. at 2776; see also Paduano v. Express Scripts, Inc., No. 14-CV-5376 (ADS)(ARL), 2014 WL 5431320, at *9 (E.D.N.Y. Oct. 27, 2014).

"To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004)(internal quotation marks and citations omitted).

Here, in opposing the respective motions to compel arbitration under the Arbitration Agreement, the Plaintiff notes that no representative from any of the Defendants signed that Agreement. Therefore, the Plaintiff implies, there was no mutual assent and intent to be bound.

"New York courts have long held, however, that a valid arbitration agreement only requires proof that the parties intended to be bound by such an agreement." Beautyko, LLC v. FedEx Ground Package Sys., Inc., No. 14-CV-0037 (RA), 2015 WL 224361, at *3 (S.D.N.Y. Jan. 16, 2015). "Indeed, even if the Agreement had not been signed by either party, the Court could still find that a valid arbitration agreement exists." Id.

Further, New York's arbitration statute requires only a written agreement – not a signed, written agreement. N.Y. C.P.L.R. 7501. In addition, because the underlying agreements could be performed within one year, they do not fall within New York's statute of frauds so that the signature of the party "to be charged therewith" would be required. N.Y. Gen. Oblig. Law § 5–701.

9

Accordingly, the Court finds that there was mutual assent and intent to be bound by both the Plaintiff and Atlantic Toyota, notwithstanding the lack of a signature by an Atlantic Toyota representative.

Contrary to the Plaintiff's contention, the fact that the Arbitration Agreement states that it is between the Plaintiff and "the Dealer signing below and anyone to whom the Dealer assigns this Arbitration Agreement" does not alter this conclusion. Rather, this language simply defines to whom the Arbitration Agreement applies, not whether it is in effect at all.

As noted above, by letter dated December 24, 2014, the Atlantic Auto Group purported to "assign[] the non-exclusive rights" under the Arbitration Agreement to the Toyota Defendants. The Court deems this assignment effective under the Arbitration Agreement.

That the assignment was made by the Atlantic Auto Group does not alter this conclusion because, as noted above, the Atlantic Auto Group is a holding company for twenty-two car dealerships, one of which is Atlantic Toyota, and Atlantic Auto Group had the authority to assign the rights to agreements entered into by Atlantic Toyota. (Gentile Decl. ¶ 3.)

Relatedly, although the assignment post-dated the commencement of this litigation, the Court notes that there are no time restrictions on such assignments. Further, Atlantic Toyota retains its rights to seek enforcement of the Arbitration Agreement notwithstanding the assignment because the assignment, by its terms, was of "the non-exclusive rights," not Atlantic Toyota's rights. Further, as previously noted, the Arbitration Agreement is between Atlantic Toyota "and," not "or," anyone to whom it assigns the Arbitration Agreement. The fact that the Atlantic Auto Group may not have been in existence at the time the Plaintiff signed the Arbitration Agreement is legally immaterial.

Finally, the fact that the Arbitration Agreement is a separate, physical document is legally irrelevant. For one thing, that agreement specifically references the Plaintiff's "purchase or financing contract or any resulting transaction or relationship." (Compl., Ex. E.) In any event, the Court finds the underlying documents to be interrelated. See Cohen v. Looking for Palladin, LLC, No. 07CV6359 (HB), 2008 WL 544597, at *2 (S.D.N.Y. Feb. 29, 2008)("I find that the arbitration agreement in the Operating Agreement governs the disputes here because the agreements are 'interrelated' and signed at the same time."); Com-Tech Assocs. v.Computer Assocs. Int'l, Inc., 753 F. Supp. 1078, 1084 (E.D.N.Y. 1990) ("[T]he Court finds that the Partnership Agreement . . . constituted an 'umbrella' for both the System and Marketing Agreements, since all three agreements are interrelated . . . . [and thus] this dispute arising out of the Marketing Agreement is subject to the broad arbitration clause contained in the Partnership Agreement.").

Further, even if the Toyota Defendants could not seek enforcement of the Arbitration Agreement based on the assignment, the Court would find that the Plaintiff is nevertheless equitably estopped from resisting such enforcement. Having elected to group the Defendants together in the complaint as an interchangeable unit based on various alleged agency relationships (Compl. ¶¶ 36-49, 84-87, 90-108.), the Plaintiff's attempt to avoid arbitration by pointing to their distinctness is unpersuasive. See Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P., 374 F. Supp. 2d 375, 378 (S.D.N.Y. 2005)("because signatory plaintiffs "specifically and repeatedly allege" that the signatory defendant "acted at all relevant times [as] the agent" of non-signatory defendants, plaintiffs were estopped from avoiding arbitration with non-signatories.")

Therefore, Atlantic Toyota and the Toyota Defendants may seek enforcement of the Arbitration Agreement. The question then becomes whether the underlying claims are arbitrable under that agreement.

Here, the Plaintiff focuses its arguments on whether an enforceable Arbitration Agreement exists and whether it was properly assigned, and fails to address, in the alternative, whether the underlying claims are arbitrable. This is not surprising given the broad scope of the Arbitration Agreement, which, as stated above, provides, in pertinent part:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign your purchase or financing contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . You expressly waive any right you may have to arbitrate a class action.

(Compl., Exh E.).

In the Court's view, this clause clearly encompasses the Plaintiff's underlying claims based on the alleged misrepresentations by Atlantic Toyota.

Further, the Plaintiff does not dispute the fact that TILA claims are arbitrable, nor could she. "Numerous courts have found TILA claims to be arbitrable." In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 408 (S.D.N.Y. 2003)(collecting cases). Similarly, the New York Court of Appeals has held that "[t]here is no doubt that parties can contract to submit the issue of fraud in the inducement to arbitration." Weinrott v. Carp, 32 N.Y.2d 190, 194, 298 N.E.2d 42, 44 (1973). Finally, claims under Section 349 and 350 of the New York General Business Law may be resolved through arbitration." Kuehn v. Citibank, N.A., No. 12 CIV. 3287

(DLC), 2012 WL 6057941, at *1 (S.D.N.Y. Dec. 6, 2012)(granting a motion to compel arbitration of certain New York State claims, including claims under Section 349 and 350).

Having concluded that the Arbitration Agreement is enforceable and that the underlying claims are arbitrable, the question then becomes the proper remedy.

The FAA provides that "upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement [.]" 9 U.S.C. § 3; see generally Carvant Fin. LLC v. Autoguard Advantage Corp., 958 F. Supp. 2d 390, 398 (E.D.N.Y. 2013)(applying Section 3 of the FAA).

Atlantic Toyota notes that "[w]here all of the issues raised in the Complaint must be submitted to arbitration, the Court may dismiss an action rather than stay proceedings." Spencer-Franklin v. Citigroup/Citibank N.A., No. 06 CIV. 3475 (GBD)(GWG), 2007 WL 521295, at *4 (S.D.N.Y. Feb. 21, 2007), report and recommendation adopted, No. 06 CIV. 3475 (GBD), 2007 WL 1052451 (S.D.N.Y. Apr. 5, 2007).

"While it does not appear that the Second Circuit has ruled directly on the question of whether dismissal is an available remedy under the FAA, the case of Salim Oleochemicals v. M/V Shropshire, 278 F.3d 90 (2d Cir. 2002)[] made clear that the court expected that a dismissal in such circumstances was permissible." Spencer-Franklin, 2007 WL 521295, at *4, n. 2.

Thus, where defendants have sought dismissal rather than a stay, courts in this Circuit have granted dismissal. See e.g., Titan Pharm. & Nutrition, Inc. v. Med. Shoppe Int'l, Inc., No. 05 Civ. 10580 (SAS), 2006 WL 626051, at *6 (S.D.N.Y. Mar. 13, 2006); Najib v. Arnold, No.

13

03 Civ. 3010 (CBM), 2005 WL 221429, at *4 (S.D.N.Y. Jan. 31, 2005); Perry v. New York Law Sch., No. 03 Civ. 9221 (GBH), 2004 WL 1698622, at *4 (S.D.N.Y. July 28, 2004).

However, given that there are claims pending against the defaulting-defendant JS Autoworld 1 LTD., as well as the Defendants Toyota Financial Service Corporation and Toyota Motor Corporation, the Court prefers to stay, rather than dismiss this action, as against the Atlantic Toyota a/k/a JS Autoworld LLC and the Toyota Defendants. The stay does not apply to JS Autoworld 1 LTD, Toyota Financial Service Corporation, and Toyota Motor Corporation.

B. The Rule 4(d)(2) Motion

As noted above, the Plaintiff moved pursuant to Fed. R. Civ. P. 4(d)(2) for (1) expenses incurred in making service on the defaulting Defendant, JS Autoworld 1 Ltd., for failing to respond to a waiver of service and (2) reasonable expenses, including attorneys' fees, in connection with the motion. The Plaintiff seeks an award of expenses of $60.05, plus attorneys' fees in the amount of $750 (3 hours at $250 per hour) in connection with making the motion, for a total of $810.05.

> Rule 4(d)(2) provides:
>
> Failure to Waive. If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
>
> (A) the expenses later incurred in making service; and the
>
> (B) reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

(emphasis added).

Here, the documentary evidence shows that the Plaintiff mailed a waiver of service to JS Autoworld 1 Ltd. Dealers Management 133 US HWY ONE NORTH PALM BEACH, FL 33408, the address for that entity listed by the New York Department of State. By letter dated October

8, 2014, Mr. Gentile represented to the Plaintiffs that JS Autoworld 1Ltd. was not the dealership entity with which the Plaintiff negotiated and is not an active entity in New York. No waiver of service as to JS Autoworld 1 Ltd. was executed.

The Plaintiff subsequently served a copy of the summons and complaint on JS Autworld 1 Ltd. at its place of business 200 Sunrise Highway Amityville, NY 11701.

The Court finds that JS Autworld 1Ltd. did not have "good cause" to refuse the requested waiver of service. Mr. Gentile's contentions about with whom the Plaintiff dealt and JS Autoworld 1 Ltd.'s corporate status go to the merits of the case, not the service itself. The Court further finds the cost of service to be substantiated by documentary evidence, and the amount of attorneys' fees requested in connection with the present motion, $750 (3 hours at $250 per hour), to be reasonable. Accordingly, the Court grants the Plaintiff's motion pursuant to Rule 4(d)(2).

### III. CONCLUSION

Based on the foregoing reasons, the motions by Atlantic Toyota (Doc No. 18) and the Toyota Defendants (Doc No. 20) are granted in part and denied in part. The Court directs the Plaintiff to submit to arbitration its underlying claims against Atlantic Toyota and the Toyota Defendants, but declines to dismiss those claims outright. Rather, the Court stays this litigation as against Atlantic Toyota and the Toyota Defendants. The stay is not in effect as against the defaulting defendant, JS Autoworld 1 Ltd, or Toyota Financial Service Corporation and Toyota Motor Corporation.

The Plaintiff's motion pursuant to Rule 4(d)(2) (Doc No. 34.) is granted in all respects. The Clerk of the Court is respectfully directed to enter partial judgment in favor of the Plaintiff in the amount of $810.05.

**SO ORDERED.**

Dated: Central Islip, New York
April 9, 2015

                                               _/s/ Arthur D. Spatt_
                                                ARTHUR D. SPATT
                                                United States District Judge